### McKEE v. MATHIAS et al.

#### No. 3187.

Court of Civil Appeals of Texas. El Paso.
May 2, 1935.

Rehearing Denied May 23, 1935.

Leo Jaffe and O. R. Armstrong, both of El Paso, for appellant.

Frank S. Anderson, of Galveston, and Jones, Goldstein, Hardie & Grambling, of El Paso, for appellees.

HIGGINS, Justice.

This is a suit for damages by Robert E. McKee against Albert Mathias, C. N. Hilton, Shearn Moody, W. L. Moody, Jr., Southwestern Hotel Company, National Hotel Company, and American National Insurance Company.

An instructed verdict was returned against the plaintiff, who appeals from the judgment rendered.

The plaintiff's suit is for damages based upon an alleged tort, consisting of a fraudulent conspiracy between the defendants to induce the El Paso Hilton Hotel Company to default on its bonds, with the understanding and agreement upon the part of Albert Mathias that he would forfeit and cancel his lease on the Hilton Hotel property and foreclose on the assets of the El Paso Hilton Hotel Company, and then enter into a new lease with a new corporation, to be owned and dominated by the Moodys and C. N. Hilton, and thereby eliminate the lien of 150 leasehold bonds.

Very briefly stated, the allegations of the petition are substantially as follows:

Mathias was and is the owner of property now known as "the Hilton Hotel."

In the fall of 1929, Mathias and Hilton Hotels, Inc., entered into a 99 year lease on the property, under which the lessee was bound to certain obligations, including the erection and furnishing of a hotel building on said property.

Mathias became the holder of certain landlord's liens and mortgage liens on the real and personal property placed on said premises by El Paso Hilton Hotel Company, the successor in interest of Hilton Hotels, Inc.

Plaintiff, McKee, became the owner of 59 bonds out of a total of 150 bonds issued by El Paso Hilton Hotel Company, each in the principal sum of $1,000, and all secured by a lien on the leasehold estate of El Paso Hilton Hotel Company and by a chattel mortgage on the personal property placed by the debtor in the hotel building. This chattel mortgage was subject to the chattel mortgage and liens in favor of Mathias.

American National Insurance Company became the holder of a note for $385,000, signed by Hilton Hotels, Inc., and secured by lien on property, including a lien on the leasehold and on the personal property of El Paso Hilton Hotel Company. This lien was subject first to the rights of Mathias and second to the rights of McKee and the other holders of the 150 bonds.

W. L. Moody, Jr., and Shearn Moody are the principal stockholders of American National Insurance Company and National Hotel Company.

Southwestern Hotel Company is owned and controlled by C. N. Hilton, W. L. Moody, Jr., and Shearn Moody.

In order to rid the El Paso Hilton Hotel Company of its bonded indebtedness, and to defraud plaintiff of the collateral securing his bonds so that C. N. Hilton and the Moodys might have the assets of the El Paso Hilton Hotel Company free of the lien securing plaintiff's bonds, C. N. Hilton, W. L. Moody, Jr., Shearn Moody, and Albert Mathias agreed that if the El Paso Hilton Hotel Company would default in its rental payments, Albert Mathias would forfeit and cancel the lease on the Hilton Hotel property, foreclose on the assets securing plaintiff's debt, and then enter into a new lease with a new corporation, to be owned, controlled, and dominated by C. N. Hilton and the Moodys. By said agreements, the El Paso Hilton Hotel Company was induced to unnecessarily default in its obligations to Mathias. Mathias then canceled his lease and foreclosed on the assets of the El Paso Hilton Hotel Company. He later transferred said assets to Southwestern Hotel Company, and made a new lease to Southwestern Hotel Company on the hotel building. The lease had substantially the same provisions as the original 99 year lease.

The concluding paragraph of the petition and prayer for relief read:

"Plaintiff further alleges that now and at all times herein mentioned the reasonable market value of said land is $450,000.00, that the reasonable market value of the improvements on said land together with the equipment, furniture and fixtures therein and thereon is the sum of $800,000.00, and that the acts above described have resulted to plaintiff's damage in the sum of $59,000.00 together with interest thereon from the 3rd day of August, 1933, the date upon which said bonds became due and pay-

able by reason of an election to mature said debt.

"Wherefore, defendants having answered herein, plaintiff prays that upon final hearing hereof he have judgment against each and all of the defendants jointly and severally for his damages, interest and costs of suit and for general relief."

The defendants answered by general demurrer and general denial.

A mass of evidence, documentary and oral, was offered upon the trial. It is unnecessary to state same in detail.

August 17, 1929, Mathias entered into a contract with Hilton Hotels, Inc., a Delaware corporation, providing for the execution of a 99-year lease on a parcel of land owned by Mathias in the city of El Paso, and that the lessee, Hilton Hotels, Inc., or its successor in interest should be required to construct on the leased premises a hotel building to cost at least $700,000, equipped with furnishings to cost at least $150,000, and provides that the improvements should be constructed without any lien upon the title of the lessor, Albert Mathias.

The Hilton Hotels, Inc., was unable to finance the construction of the building without mortgaging the land in fee, and on October 5, 1929, said parties entered into an amended agreement which provides that the lessee, Hilton Hotels, Inc., and Albert Mathias shall execute an incumbrance on the real estate and improvements to secure an indebtedness of $450,000. The proceeds of such loan to be used by Hilton Hotels, Inc., in the construction of a building on the leased premises. The lien to be against the title of Mathias as well as the title of the lessee. Said amended agreement further provides that the lessee shall give Mathias a chattel mortgage on all of the personal property to be placed in the hotel for the purpose of indemnifying him against having to pay any part of the $450,000 mortgage, and provides for an amended description of the leased real estate, and provides that should the lessee "default in the payment of any installment of principal or interest to become due upon said note or notes (evidencing the $450,000.00 loan) or otherwise default in the performance of any condition of said trust deed, and if lessee shall fail to remove such default after having received 30 days' notice, in writing, from the lessor, calling upon it to remove such default, that then, in such event, lessor may, at his option, terminate and for-

feit said lease, and whereupon lessor may, at his option, without further demand, re-enter the above described premises or any part thereof and take possession of the same as against all persons whomsoever." It also provides that "should the lessor make good any default of lessee in the performance of the terms of the trust deed or the notes secured thereby, the lessor might at his option bring suit to collect such sums of money as he might have paid for the account of the lessee, with interest." It also provides that the lessor should have a first chattel mortgage lien upon all personal property to be placed in the hotel for the purpose of guaranteeing that the lessee would perform all of the terms and conditions of the original lease and of the supplemental lease.

By instrument dated September 1, 1929, Mathias leased the land to Hilton Hotels, Inc., for 99 years. It provides:

(1) For cash rental as follows: $1,250 from August 15, to August 31, 1930; $30,-000 per year from September 1, 1930, to August 31, 1935; $36,000 per year from September 1, 1935, to August 31, 1940; $42,000 per year from September 1, 1940, to August 31, 1950; $48,000 per year from September 1, 1950, to August 31, 1965; and $55,000 per year from September 1, 1965, for the balance of the term of 99 years.

(2) The lessee shall pay all taxes and other public charges.

(3) The lessee may assign its interest in the lease.

(4) That lessor should have a lien upon all property of the lessee placed in the premises to secure the performance of the terms of the lease.

(5) That all sums due from the lessee to the lessor should bear interest at the rate of 8 per cent. per annum from the date when due, and that if lessor should employ attorneys for the collection of any sums of money the lessee should pay to the lessor such reasonable attorney's fees that might be incurred on account of any breach of the lessee.

(6) That upon any termination of the lease, all improvements should belong to the lessor.

(7) Provides for a lien on all property of the lessee placed on the premises, to secure the performance of the terms of the lease.

This lease was subsequently amended by instrument dated February 21, 1930. This instrument amends the original lease by incorporating in it the provisions called for in the supplemental agreement, dated October 5, 1929, and provides that if the lessee should default in the keeping of any of the covenants made by it in the deed of trust to Pacific Mutual securing the note for $450,000 payable to it, including covenants to pay taxes and to pay principal and interest due by it to Pacific Mutual, the lessor might cancel the lease on 30 days' notice; also provides if lessor should make any of such defaults good, lessee should reimburse lessor for any such advances.

On February 28, 1930, Hilton Hotels, Inc., conveyed and assigned to El Paso Hilton Hotel Company, a Texas corporation, the interest in the leasehold of the lessee, Hilton Hotels, Inc., reserving a vendor's lien to secure the payment of 150 notes, each in the principal sum of $1,000, payable to bearer, signed by El Paso Hilton Hotel Company. El Paso Hilton Hotel Company agreed to keep the covenants in the lease and a vendor's lien is retained upon the leasehold estate and the estate of the lessee in and to any and all improvements which were then on said premises, or which might thereafter be placed upon said premises. It was expressly provided, with reference to said lien, that said lien should remain subordinate to the lien of the deed of trust securing the $450,000 note held by Pacific Mutual, and should also be and remain subordinate and inferior to the lien of Albert Mathias, retained to secure the payment of rentals and performance of all of the terms and conditions in the lease and supplemental lease covering the property.

On the same date (February 28, 1930) Mathias and El Paso Hilton Company executed a deed of trust upon the land to certain trustees to secure the Pacific Mutual Life Insurance Company in the payment of a $450,000 note executed by said company representing money borrowed to construct the hotel. This deed binds the grantors to the payment of taxes as they become due, and to the payment of principal and interest on note as such payments become due, and contains the usual acceleration of maturity clauses and other provisions usually found in deeds of trust.

Interest and installments upon the principal of the note were payable every six months; the first principal installment being payable August 1, 1931.

In compliance with the agreement of October 5, 1930, the El Paso Hilton Hotel

Company gave Mathias a chattel mortgage lien upon all personal property to be placed in the Hilton Hotel to guarantee that El Paso Hilton Hotel Company will pay the indebtedness to the Pacific Mutual as it should become due, and would keep all of the terms of the deed of trust securing such indebtedness, and would pay all taxes as the same became due, and further provided that the lien of the mortgage should be a first lien, and that if the mortgagor should make default in any of the obligations secured by its lien that the mortgagee might take immediate possession of the mortgaged property.

On March 1, 1930, the El Paso Hilton Hotel Company executed a deed of trust to El Paso National Bank. By this deed the interest of El Paso Hilton Hotel Company in the lease and its interest in the personal property to be placed in the hotel building is assigned to El Paso National Bank, trustee, for the purpose of securing the payment of 150 bonds payable to bearer, each in the principal sum of $1,000, being the same bonds described in above deed of February 28, 1930, from Hilton Hotels, Inc., to El Paso Hilton Hotel Company, and provides: "Said liens are inferior to the lien of the Lessor in said lease for rents reserved and the performance of the covenants thereof, and a mortgage upon the fee simple title to said land in the sum of $450,000.00." It also provides that in the event of default the trustee shall have the right, upon proper request from the holders of a majority of the bonds, to take appropriate action for foreclosure of lien and for the protection for the interests of the bondholders. These bonds are referred to as the "leasehold bonds."

The plaintiff, McKee, constructed the hotel building upon a cost plus 10 per cent. basis, and in part payment for so doing received 59 of the 150 leasehold bonds secured by the lien in the deed of trust from El Paso Hilton Hotel Company to El Paso National Bank, trustee. Each bond, upon its face, recites that the liens securing its payment are inferior to the lien of the lessor to secure rents, and to secure the performance of the covenants of the lease.

On September 11, 1930, Hilton Hotels, Inc., and El Paso Hilton Hotel Company gave to the American National Insurance Company a mortgage creating a lien upon the leasehold of El Paso Hilton Hotel Company and all of the furniture, fixtures, and furnishings in the hotel building to secure the payment of eleven notes aggregating the principal amount of $385,000 signed by Hilton Hotels, Inc., and payable to the order of the American National Insurance Company.

The El Paso Hilton Hotel Company defaulted in the payment of interest and principal to the Pacific Mutual Company.

It also defaulted in the payment of city, state, and county taxes, and in ground rentals due Mathias and remained in default.

It also defaulted upon the series of 150 leasehold bonds above mentioned, and sought a two years' moratorium on payments due thereon.

On June 5, 1933, the Pacific Mutual and Mathias gave notice of default. This notice is addressed to El Paso Hilton Hotel Company, Hilton Hotels, Inc., R. E. McKee, A. C. Nicholson, trustee, American National Insurance Company of Galveston, Tex., and El Paso National Bank, trustee, advising said parties of the default in the payment of taxes, and of the fact that Albert Mathias has paid said taxes to prevent Pacific Mutual declaring an acceleration of maturity on its note, and advising that Albert Mathias reserves the right to forfeit the lease or to file suit for the collection of the taxes.

On July 10, 1933, the Pacific Mutual and Mathias gave notice of default addressed to El Paso Hilton Hotel Company, Hilton Hotels, Inc., R. E. McKee, A. C. Nicholson, trustee, American National Insurance Company, and El Paso National Bank, trustee, advising that default had been made in the payments due to the Pacific Mutual from the 1st of July, 1933, and that unless the default was made good within 30 days, the Pacific Mutual and Albert Mathias reserved the right to either forfeit the lease or file suit for the collection of the sums due.

On August 3, 1933, plaintiff McKee and others constituting a majority in amount of holders of the leasehold bonds requested the El Paso National Bank, trustee, to take action on the leasehold bonds, including a demand for the possession of the hotel, and a suit for the appointment of a receiver for El Paso Hilton Hotel Company, with authority to take over and operate the hotel.

On August 4, 1933, the El Paso Hilton Hotel Company transferred and assigned to the Hilton Hotel Company at Dallas, Tex., a Texas corporation, the lease and other assets of the El Paso Hilton Hotel Company.

On August 8, 1933, suit No. 40016 was filed by El Paso National Bank, trustee, against El Paso Hilton Hotel Company and others, including Albert Mathias, in which El Paso National Bank, trustee, at the instance of R. E. McKee and others, constituting the holders of the majority in amount of the leasehold bonds, sued for judgment on the bonds and foreclosure on the lease and asks the appointment of a receiver for the El Paso Hilton Hotel Company, with authority to take over the operation of the Hilton Hotel at El Paso.

On August 14, 1933, payment of ground rents due Mathias was in default. Mathias previously had paid the delinquent taxes and amounts then due the Pacific Mutual to prevent the acceleration of the entire debt to the Pacific Mutual Company.

On said date Mathias canceled the lease, as he was authorized under the circumstances and terms of the lease to do, and demanded possession of the property. The cancellation was assented to by the Hilton Hotel Company at Dallas and El Paso Hilton Hotel Company and possession immediately delivered to Mathias.

On August 21, 1933, in said cause No. 40016, R. R. Bowie was appointed receiver of El Paso Hilton Hotel Company but without authority to take possession of the Hilton Hotel Company building.

Bowie qualified as receiver August 24, 1933.

Other pertinent documentary evidence may be briefly mentioned as follows:

"First Amended Original Petition of Plaintiff, Albert Mathias in cause No. 39971 against the El Paso Hilton Hotel Company and others, the amended petition being filed August 24, 1933. This petition made the Receiver of the El Paso Hilton Hotel Company a party and also made El Paso National Bank, Trustee for the bondholders, a party. It was filed on leave of the Court which had appointed R. R. Bowie, Receiver of the El Paso Hilton Hotel Company, and it sought a foreclosure of the lien on the personal property in the Hilton Hotel, to secure the payment of the sums due Mathias from El Paso Hilton Hotel Company.

"Answer and cross-action of El Paso National Bank, Trustee, filed in cause No. 39971, Sept. 2, 1933.

"Plea in Abatement and Answer of R. R. Bowie, Receiver, filed in cause No. 39971 on Sept. 5, 1933.

"Amended Answer of Hilton Hotels, Inc. and Hilton Hotel Company, filed in cause No. 39971, Sept. 21, 1933.

"Amended Answer of American National Insurance Company, filed in cause No. 39971 on September 22, 1933.

"Amended Answer of Nicholson, Trustee, filed in cause No. 39971 on October 9, 1933.

"Application of R. R. Bowie, Receiver, filed in cause No. 40016, requesting authority to make a compromise with Albert Mathias, filed October 9, 1933.

"Judgment in cause No. 39971, dated October 9, 1933. This judgment provides for a recovery in favor of Albert Mathias against R. R. Bowie, Receiver of the El Paso Hilton Hotel Company for the sum of $34,279.01, together with interest and costs, and provides for a foreclosure of Plaintiff's Chattel Mortgage lien on all of the personal property owned by the El Paso Hilton Hotel Company, and which was located in the Hilton Hotel in El Paso, Texas, on the 4th of August, 1933, as against R. R. Bowie, Receiver of the El Paso Hilton Hotel Company, Hilton Hotel Company, Hilton Hotels, Inc., A. C. Nicholson, Trustee, American National Insurance Company of Galveston, Texas, and El Paso National Bank, Trustee, subject to the mortgage in favor of the Pacific Mutual Life Insurance Company of California, and subject to a mortgage in favor of Albert Mathias, securing him against making any payments to the Pacific Mutual Life Insurance Company of California, in the future. Cross-action of El Paso National Bank, Trustee, voluntarily dismissed by it.

"Order dated October 11, 1933, whereby the plaintiff in cause No. 40016 voluntarily dismissed said suit.

"Bill of Sale in cause No. 39971, dated November 22, 1933, from the Sheriff of El Paso County, Texas, to Albert Mathias. Describes the property as being the property belonging to El Paso Hilton Hotel Company and located in the Hilton Hotel Building in El Paso, Texas, and as further described in Plaintiff's petition and as described in Exhibit 'A', attached to the Sheriff's Bill of Sale."

Mathias remained in possession of operation of the land and hotel until about September 21, 1933, when he leased the same for 99 years to the Southwestern Hotel Company, a Texas Corporation, organized by C. N. Hilton by whom it was owned and controlled.

On November 24, 1933, Mathias gave bill of sale to said Southwestern Hotel Company for all of the personal property which he had bought at the sheriff's sale described in the above-mentioned bill of sale from the sheriff of El Paso county, dated November 22, 1933.

Since September 21, 1933, the Southwestern Hotel Company has continued in possession and operation of the hotel property.

Hilton Hotels, Inc., is a Delaware corporation and was the holding company of a number of Texas corporations which separately owned and operated a chain of hotels known as the Hilton Hotels. C. N. Hilton owned and controlled the parent and subsidiary corporations. The El Paso Hilton Hotel Company and the Hilton Hotel Company of Dallas were two of the subsidiary corporations.

The defendants Moody own and control the defendants National Hotel Company and American National Insurance Company.

The National Hotel Company owned and operated a chain of hotels known as the Moody chain.

### Opinion.

Upon consideration of the whole evidence, we are of the opinion the instructed verdict was properly returned.

The testimony as we view it fails to show that the action of Mathias in canceling the lease and foreclosing by court action his lien upon the personal property in the hotel was in pursuance of any preconceived fraudulent conspiracy or scheme upon the part of the defendants to eliminate the second lien of the holders of the leasehold bonds.

The hotel was built and furnished by the El Paso Hilton Hotel Company with the $450,000 borrowed from the Pacific Mutual Company, the $150,000 leasehold bonds, and $287,000 borrowed from Hilton Hotels, Inc., the parent corporation.

The El Paso Hilton Hotel Company was in financial difficulty from the time the hotel began operating. The economic condition prevailing throughout the entire period covered by the transactions in question is known to all men. Said company was unable to meet its obligations. The evidence shows that C. N. Hilton strenuously endeavored to meet and protect the company's obligations, and was unable to do so. The Pacific Mutual was threatening to mature the entire debt of $450,000 because of tax delinquency and delinquency in the payment of interest and principal installments due it. The record indicates Mathias is of perhaps advanced age and intrusts his business affairs in large measure to his son-in-law, E. H. Krohn, who, with the approval of Mathias, acted for him. By the delinquencies mentioned and the threatened action of the Pacific Mutual, the situation was fraught with grave danger to Mathias, who owned the land subject to the leasehold. In addition to that danger, McKee and other holders of the leasehold bonds, before the cancellation of the lease was made by Mathias, caused the El Paso National Bank, trustee, to file suit upon the bonds and sought a receivership.

The evidence shows conclusively that McKee and the other holders of the leasehold bonds were afforded every opportunity and besought to protect the delinquencies, and failed and refused to do so. The action of Mathias in protecting the delinquencies was compulsory upon him in order to protect his own superior title and lien. The evidence, as we view it, wholly fails to impeach the good faith of Mathias and Krohn in the action taken in canceling the lease and foreclosing the superior lien of Mathias upon the hotel furniture and fixtures.

It is to be remembered that the lien of the leasehold bonds was subordinate to the title of Mathias and his lien for ground rentals and advancements.

The second lienholders were either unwilling or unable to protect their lien, and certainly no obligation rested upon Mathias to do so for them.

Appellant stresses the fact that in a short time Mathias surrendered the property under a new lease to the Southwestern Hotel Company, a corporation organized and controlled by Hilton, together with the hotel furnishings, upon being reimbursed for the advances which he had made and expenses incurred.

Under the circumstances, this cannot be regarded as sufficiently showing the

fraudulent conspiracy asserted by the plaintiff. Mathias was not a hotel man, and, as we have heretofore indicated, his action in canceling the lease and foreclosing his chattel mortgage lien was under compulsion in order to protect his own interests. It was most natural that he should again lease the property at the earliest possible time.

Without discussing the matter further, our conclusion is that the evidence was insufficient to warrant submission of the tort alleged.

Appellant further insists that the various Hilton corporations and the Southwestern Hotel Company were merely the corporate representatives of Hilton; that the facts pleaded and proved entitled plaintiff to foreclosure of lien against all defendants, or at least against the Southwestern Hotel Company, the corporate alter ego of C. N. Hilton, under his prayer for general relief.

We are entirely familiar with the rule that under the prayer for general relief the court generally may and should grant a plaintiff such relief as may be appropriate to the facts proven and supported by the pleadings. But such rule has no present application.

The allegations of the petition and the prayer plainly show the action was based upon an alleged tort, and the relief sought was by way of damages. The action was inconsistent with foreclosure. There was no alternative prayer for foreclosure as there should have been if such alternative relief was desired. So far as the record discloses, there was no suggestion by plaintiff of any right of foreclosure until, the amended motion for new trial was filed.

In Denison v. League, 16 Tex. 399, 400, Judge Lipscomb said: "And to permit him, after so framing his petition, to claim damages, contrary to the specific relief prayed, under his general prayer for relief, would operate as a surprise to the other party; as no one would believe, from the structure of this part of the petition that damages would be the object sought. And damages would not be consistent with the facts stated in the petition, for a specific conveyance. Relief is sometimes allowed, different from the relief prayed, under the general prayer for relief; but the relief granted in such cases, must be consistent with the objections of the petition. And such different relief is never allowed, where it was calculated to surprise the other party."

In Behrens Drug Co. v. Hamilton (Tex. Civ. App.) 45 S. W. 622, 623, affirmed in 92 Tex. 284, 48 S. W. 5, Judge Key said: "When the main object of a petition is to recover a particular judgment, specified in the prayer different relief, inconsistent with the relief prayed for, will not be granted, although the petition prays for general relief."

Under the authorities cited and the manifest theory upon which the case was tried, no error is shown by the failure to award foreclosure.

Affirmed.

### On Rehearing.

In further support of our ruling that appellant was not entitled to the alternative relief of foreclosure under his prayer for general relief, see Jennings v. Texas Farm Mortgage Company, 80 S.W.(2d) 931, by the Commission of Appeals.